UNITED STATES, Appellee,

v.

Corporal Michael T. IRWIN, Jr., 459–53–6102, United States Army, Appellant.

ACMR 9201313.

U.S. Army Court of Military Review.

10 May 1994.

For Appellant: Joseph W. Kastl (argued); Major Robin L. Hall, JAGC (on brief).

For Appellee: Captain Louis E. Peraertz, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Richard A. Gallivan, JAGC USAR, Major James L. Pohl, JAGC, Major Kenneth T. Grant, JAGC (on brief).

Before CREAN, MORGAN, and GONZALES, Appellate Military Judges.

OPINION OF THE COURT

GONZALES, Judge:

[1] Pursuant to his pleas, the appellant was found guilty by a military judge of absence without leave, willful disobedience of a superior commissioned officer, rape, forcible sodomy, indecent acts, kidnapping, wrongfully communicating a threat, and unlawful entry in violation of Articles 86, 90, 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 890, 920, 925, 934 (1988) [hereinafter UCMJ].[1] The appellant was

---

1. The appellant pled guilty to unlawful entry, in violation of Article 134, UCMJ, as a lesser includ-

sentenced by a general court-martial composed of officer members to a dishonorable discharge, confinement for thirty years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentenced as adjudged.[2]

Before this court, the appellant asserts, inter alia, that the military judge erred by allowing the prosecution to play the tape recording of the appellant's guilty plea inquiry before the members as the centerpiece of its presentencing effort. He further contends that because of this error, the contents of the tape recording advised the members of uncharged misconduct and matters of which the accused was found not guilty. He urges this court to find that he was prejudiced by this error and order a rehearing on sentencing. We disagree and affirm.

## I. The Facts

The appellant entered his guilty pleas without the benefit of a pretrial agreement.[3] The military judge advised the appellant of the meaning and effect of his guilty pleas and the waiver of his rights under the Fifth and Sixth Amendments. The appellant also was told that he would be placed under oath and questioned by the military judge "to determine whether or not you are, in fact, guilty." [4] The military judge did not advise the appellant that any statements he made during the providence inquiry could be used against him later in the sentencing portion of his court-martial.[5] There was no stipulation of fact for the military judge to use during the providence inquiry or for the court members to use for sentencing purposes.

In the providence inquiry, the appellant described in detail the how, when, why, and where he committed each of the offenses. His recitation of the facts not only provided the factual basis required by *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), and Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 910(e) [hereinafter R.C.M.], but it also included details of the circumstances surrounding the offenses.[6] The military judge entered his findings, then recessed the court. The court reconvened the following morning.

Prior to the reconvening of the court, the trial counsel gave notice to the judge and the defense counsel that the government intended "to use the recitation of the facts on that tape by the accused and play that back to the panel members.[7] It will not be provided to

ed offense of burglary, Article 129, UCMJ. He also pled guilty to indecent acts, in violation of Article 134, UCMJ, as the lesser included offense of indecent assault, Article 134, UCMJ.

2. Three days after the appellant's court-martial, he was tried for the same major nonmilitary crimes in the Fifth Judicial District Court for the State of Oklahoma, Comanche County. Upon his pleas of guilty, he was sentenced to confinement for twenty years "to run consecutive to any other sentence, specifically the sentence received by the defendant as a result of prosecution by the United States Army at Fort Sill, Oklahoma."

Double jeopardy did not bar the subsequent civilian prosecution of the appellant. However, the victim of the Article 120, 125, and 134 offenses was a female soldier and former girlfriend of the appellant. It would appear that the Army had a stronger interest in prosecuting the appellant for these offenses.

The Army has a policy that, "A person subject to the UCMJ who has been tried in a civilian court may, but *ordinarily* will not be tried by court-martial ... for the same act over which the civilian court has exercised jurisdiction." Army Reg. 27–10, Legal Services: Military Justice, para. 3–5 (22 Dec. 1989). We commend this policy to civilian authorities.

3. The trial defense counsel's attempts to secure an agreement that would have required the convening authority to suspend any confinement in excess of fifteen years were not successful.

4. Record of trial, p. 342.

5. We are aware that, although not required by Dep't of the Army, Pam. 27–9, Military Judges' Benchbook (1 May 1982), some trial judges, as a matter of their own practice, will advise the accused that anything the accused says during the providence inquiry can be considered by the court members during the sentencing portion of the court-martial. We commend this practice.

6. The appellant's recollection of the events was so vivid at two places during the providence inquiry that he spoke without interruption or prompting by the military judge for three and six pages, respectively, in the record of trial. No doubt, it was the appellant's impressive performance that caused the trial counsel to subsequently attempt to provide the taped inquiry to the court members for sentencing purposes.

7. Notice was given to the trial defense counsel and the military judge at approximately 1700 hours on 8 June 1992. This matter was dis-

take but they will be given the opportunity to hear, in aggravation, the recitation of facts by the accused."[8] The trial counsel argued that the appellant's statement was, in effect, a judicial confession; that the court members should have the facts surrounding the offenses in order to adjudge a proper sentence; and that playing the tape would be in accordance with *United States v. Holt,* 27 M.J. 57 (C.M.A.1988).

The trial defense counsel objected on the grounds that the tape recording had not been authenticated; that the matters stated during the providence inquiry did not constitute proper aggravation evidence; that no notice was given to the defense before trial that the trial counsel intended to play the tape recording of the providence inquiry to the court members; that the tape would be cumulative because the victim was going to testify; that the use of a recording was unprecedented; that the recording contained uncharged misconduct; and that the recording had no probative value. The defense counsel subsequently withdrew its objection based on the authenticity of the tape recording after listening to the tape during a recess. The military judge's rulings on the other six objections were adverse to the appellant.

The government began its case in aggravation with the tape recording. That portion of the providence inquiry that began after the military judge said, "why don't you just tell me what ... occurred"[9] was played to the court members. It described, in the appellant's own words, the events in the charges and specifications.

## II. The Law

We begin our analysis with a review of *United States v. Holt,* 27 M.J. 57 (C.M.A. 1988). This case held that it is not error for the military judge to consider matters elicited during the providence inquiry on sentencing. The Court of Military Appeals also observed in this opinion that the sworn testimony given by the accused during the provi-

dence inquiry "can be received as an admission by the accused and can be provided [to the court members] either by a properly authenticated transcript or by the testimony of a court reporter or other persons who heard what the accused said during the providence hearing." *Holt,* 27 M.J. at 60–61.

In his argument on sentencing, the trial counsel in *Holt* compared one small aspect of the accused's statement during the providence inquiry with contradictory testimony given by an agent of the Criminal Investigation Command (CID) to show that the accused had been dishonest with either the CID agent or the court-martial. There was no objection by the trial defense counsel. Because of factual circumstances surrounding the trial counsel's use of but a single matter from the providence inquiry in *Holt,* subsequent decisions interpreting *Holt* have been inclined to limit the application of its broad language, and we are disposed to do likewise.[10]

Three cases by the Air Force Court of Military Review have placed limits on that part of the *Holt* opinion concerning the use of an accused's statements made during the providence inquiry. In one case, that court expressed its concern that a trial judge had expanded the rule announced in *Holt* and sought to limit its effect by saying, "only statements by an accused during the providence inquiry amounting to aggravating circumstances are admissible during sentencing [before court members]." *United States v. Touart,* ACM 28259, 1991 WL 85215 (A.F.C.M.R. 26 Apr. 1991) (unpub.). In *Touart,* the trial counsel provided to the court members not only the accused's statements made during the providence inquiry that having Graves Disease was not a defense to the charged offenses, but also the comments by his trial defense counsel concerning the results of the accused's sanity board. These matters were offered to rebut the suggestion by the defense during sentencing that when

cussed by all parties in a R.C.M. 802 session held moments before the reconvening of the court on 9 June 1992.

8. Record of trial, p. 411.

9. Record of trial, p. 361.

10. The Court of Military Appeals has cited *Holt* in three subsequent opinions, none of which were helpful in resolving the issue before this court.

Graves Disease is coupled with a severe drinking problem, it could lead to diminished impulse control. The Air Force Court of Military Review noted that *Holt* spoke of sworn testimony by the accused only; not remarks by his trial defense counsel. That court also found that the appellant's statements about Graves Disease did not constitute "aggravating circumstances" and, therefore, should not have been presented to the court members. Nevertheless, it found that the statements had no unfair prejudicial impact on the court members' deliberation and affirmed the findings and the sentence. *Touart*, slip op. at 3.

A case in which the accused's statements made during the providence inquiry constituted an "aggravating circumstance" and thus could be presented to the court members was *United States v. Newton*, ACM S28573, 1993 WL 522206 (A.F.C.M.R. 9 Dec. 1993). There, the Air Force Court of Military Review approved trial counsel's use, in his argument on sentencing before court members, of the accused's admission during the providence inquiry that he had not made restitution for the multiple bad checks he had written. That court concluded that such an admission was "evidence in aggravation" and, therefore, admissible under R.C.M. 1001(b)(4). *Newton*, slip op. at 4.

Although a judge alone case, notice to the accused on the possible uses of the statements he makes during the providence inquiry was noted by the Air Force Court of Military Review in *United States v. Koser*, ACM 29902, 1993 WL 431248 (A.F.C.M.R. 30 Sept. 1993). "Oral statements of an accused made during a guilty plea colloquy for the purpose of determining the providence of his pleas may be used for only one other purpose during the trial, which is sentencing.... The military judge properly advised Lieutenant Koser of the [two] limited purposes for which his sworn statements during the guilty plea inquiry could be used." *Koser*, slip op. at 3.

The Navy–Marine Corps Court of Military Review has held that notice and an opportunity to object are two conditions that should be satisfied before an accused's admissions during the providence inquiry can be pre-sented to the court members under *Holt*. In *United States v. Dukes*, 30 M.J. 793 (N.M.C.M.R.1990), the accused stated during the providence inquiry that his absence was terminated when his mother called the local police to apprehend him. This information was used by the trial counsel to make a point in his argument on sentencing before the military judge. On appeal, the Navy–Marine Corps Court of Military Review said, "We take this occasion to emphasize that *United States v. Holt*, 27 M.J. 57 (C.M.A.1988), permits the trial counsel to offer an accused's responses during the providence inquiry into evidence, but that such responses are not automatically in evidence, even in a trial by military judge alone, for an accused must be given not only notice of what matters are being considered against him but also an opportunity to object to admission of all or part of the providence inquiry on the grounds of improper aggravation, undue prejudice, or whatever. A careful reading of *Holt* in this regard is required." *Dukes*, 30 M.J. at 794–95; *see also United States v. English*, 37 M.J. 1107, 1109 (N.M.C.M.R. 1993). Since the defense did not object to the trial counsel's sentencing argument, the Navy–Marine Corps Court of Military Review considered any error waived. *Dukes*, 30 M.J. at 795.

## III. Decision

■ We agree with the language in *Holt* that sworn testimony given by an accused during the providence inquiry "can be brought" to the attention of the court members for sentencing purposes. However, consistent with the opinions of the Air Force Court of Military Review and the Navy–Marine Corps Court of Military Review, we do not view this rule as absolute. Although we find no indication in *Holt* that would prevent a trial counsel from presenting all or any part of the taped providence inquiry to the court members as part of the government's presentation on sentencing pursuant to R.C.M. 1001(a)(1)(A), its introduction into evidence must also be evaluated under the Military Rules of Evidence and Rules for Court–Martials.

In the instant case, the trial counsel gave the defense notice after the providence inqui-

ry that he was going to offer the playing of the taped inquiry to the court members on sentencing. The military judge then gave the defense an opportunity to present its seven objections.

■ We have reviewed the record of trial and the briefs filed by the appellant and the government, and have carefully considered the oral arguments presented by counsel before this court. We find that the defense withdrew its objection based on authentication and, therefore, waiver of this issue applies. Mil.R.Evid. 103(a)(1); *United States v. McLemore,* 10 M.J. 238, 240 n. 1 (C.M.A.1981). We also find that the information on the tape constituted aggravating circumstances directly relating to or resulting from the offenses of which the appellant was found guilty. R.C.M. 1001(b)(4); *United States v. Shupe,* 36 M.J. 431, 436 (C.M.A. 1993); *United States v. Broussard,* 35 M.J. 665, 670 (A.C.M.R.1992). The taped providence inquiry clearly outlined all the factual circumstances of each incident and was not merely a recitation by the appellant of the elements of the offenses. He told all the details of his misconduct that would permit a sentencing authority to fully understand the facts "directly relating to or resulting from" the offenses.

We further find that the playing of the tape was not cumulative because there was no stipulation of fact and no other evidence had been admitted prior to the playing of the tape. Mil.R.Evid. 403; *United States v. Watkins,* 36 M.J. 752, 753 (A.C.M.R.1993). We also find that all instances of uncharged misconduct were directly related to the offenses. R.C.M. 1001(b)(4); *United States v. Wingart,* 27 M.J. 128, 136 (C.M.A.1988).

Accordingly, we hold that the military judge did not err by allowing the trial counsel to play the taped providence inquiry to the court members as part of the government's presentation of evidence on sentenc-

ing. R.C.M. 1001(a)(1)(A); *Holt,* 27 M.J. at 60–61.

Despite our holding, we question the wisdom of playing the taped providence inquiry to court members on sentencing. We caution military judges to exercise extreme care when a trial counsel seeks to offer such evidence. The playing of the tape must satisfy Mil.R.Evid. 401 and 402 (relevant evidence); R.C.M. 1001(b)(4) (aggravating circumstances directly related to or resulting from the offenses of which the accused has been found guilty); Mil.R.Evid. 403 (probative value, unfair prejudice, and cumulative evidence); and Mil.R.Evid. 901 (authentication).

■ In those cases where a stipulation of fact has been used to determine findings and is also intended to be used for sentencing purposes, the playing of the taped providence inquiry may be cumulative and, therefore, subject to exclusion under Mil.R.Evid. 403; *see United States v. Williams,* 3 M.J. 239, 243 n. 8 (C.M.A.1977). In such cases, the military judge should require the government to elect between offering the stipulation of fact and any other evidence on sentencing or the taped providence inquiry.[11]

We also have considered the remaining assignments of error, including the one personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and hold that none warrant relief. We specifically reviewed with great care the appellant's claim that his trial defense counsel fell short of the competency standards under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987). We find that the appellant has failed to meet his heavy burden of showing that his trial defense counsel's performance was deficient and that the deficiency resulted in prejudice. Accordingly, the strong presumption that his trial defense counsel was competent prevails. *Strickland,*

---

11. An accused may not always be successful in having one of his objections to the playing of the taped providence inquiry granted by the military judge. In this regard, we recognize that as a last resort an accused may request withdrawal of his plea(s) of guilty and the military judge may as a matter of discretion permit the accused to do so.

R.C.M. 910(h); *United States v. Silver,* 35 M.J. 834, 836 (A.C.M.R.1992). We will review any instance of a military judge's refusal to grant such a request on the basis of abuse of discretion. *United States v. Leonard,* 16 M.J. 984, 986 (A.C.M.R.1983).

466 U.S. at 698–700, 104 S.Ct. at 2070–71; *Scott,* 24 M.J. at 188; *United States v. Crum,* 38 M.J. 663 (A.C.M.R.1993).

The findings of guilty and the sentence are affirmed.

Senior Judge CREAN and Judge MORGAN concur.